UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSEPH ROWAN, JR.,

                Plaintiff,

          - against -

LABORERS INTERNATIONAL UNION OF
NORTH AMERICA and LOCAL 6A OF THE
LABORERS INTERNATIONAL UNION OF
NORTH AMERICA

                Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
10 CV 3855 (DRH) (ETB)

**APPEARANCES:**

**RAAB, STURM & GANCHROW, LLP**
Attorneys for Plaintiff
317 Madison Avenue
Suite 1708
New York, New York 10017
By:    Ira A. Sturm, Esq.

**PATTON BOGGS, LLP**
Attorneys for Defendants
2550 M Street, N.W.
Washington, D.C.  20037
By:    Samuel Rosenthal, Esq.
        Patrick J. Slevin, Esq. (*Pro Hac Vice*)

**HURLEY, Senior District Judge:**

Plaintiff Joseph Rowan, Jr. commenced this action against defendants Laborers

International Union of North America ("LIUNA") and Local 6A of the Laborers International

Union of North America ("Local 6A") asserting that his expulsion from membership in Local 6A

violated his rights under Section 101 of the Labor-Management Reporting and Disclosure Act,

29 U.S.C. § 411 ("LMRDA").  Presently before the Court is defendants' motion, made pursuant

to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss the Amended Complaint.  For the

reasons set forth below, defendants' motion is granted. Plaintiff will, however, be granted leave to move to amend his pleading to the limited extent articulated below.

## BACKGROUND

The following facts are drawn from the allegations in the Amended Complaint as well as the documents incorporated by reference therein and the documents of which the Court may take judicial notice,[1] and are presumed true for purposes of this motion.

### LIUNA and the MTDC

In the early 1990's, the United States Department of Justice ("DOJ") began an investigation into alleged corrupt practices involving LIUNA and one of its constituent district councils, the Mason Tenders District Council of New York and Long Island (the "MTDC").[2] As a result of these investigations, the government entered into separate settlements with LIUNA and with the MTDC. According to plaintiff, "the intent of these settlements was, inter alia, to

---

[1]    See Section I.A in the "Discussion" portion of the text, *infra*.

[2]    Although the relationship between LIUNA and the MTDC is not described with any particularity in the Amended Complaint, that relationship has been described by Judge Robert W. Sweet as follows:

> The [MTDC] is an association of entities that coordinate their efforts to represent manual laborers throughout the New York construction industry. The [MTDC] consists of twelve local labor unions (the "Locals") affiliated with [LIUNA] . . . The [MTDC] engages in collective bargaining with employers on behalf of the members of the Locals . . . [and] manages pension and health insurance funds for the members. In essence, the [MTDC] is the central governing body of the twelve constituent Locals and has supervisory powers on all matters relating to the Locals.

*United States v. Mason Tenders Dist. Council of Greater N.Y.*, 1995 WL 679245, at *2 (S.D.N.Y. Nov. 15, 1995).

provide for internal mechanisms for the searching out and removal of criminal elements from the respective organizations."  (Am. Compl. ¶ 7.)  Specifically, in December 1994 the government and the MTDC entered into a Consent Decree, approved by the United States District Court for the Southern District of New York, which provided for, inter alia, the appointment of two Court officers: a Monitor and an Investigations Officer.  *See United States v. Mason Tenders Dist. Council of Greater N.Y.*, 1994 WL 742637, at *3 (S.D.N.Y. Dec. 27, 1994).  Michael Chertoff was appointed by the Court to serve as Inspections Officer (Am. Compl. ¶ 8) and had the following duties: "[T]o investigate and to prosecute any proscribed acts that either have occurred since January 1, 1982 or occur in the future at any time prior to the expiration of the Consent Decree, and to propose appropriate sanctions for such conduct." *Mason Tenders Dist. Council*, 1994 WL 742637, at *6.[3]

### Plaintiff Enters Into the MTDC Settlement

At some point prior to July 1997, plaintiff belonged to Local 66, a local LIUNA-affiliated union that was a member of the MTDC.  The Investigations Officer brought an initial set of charges of misconduct against plaintiff in July 1997, and brought an additional set of charges in January 1998.  According to plaintiff, those charges were "brought against him as part of a 'witch hunt' to force him to rescind his nomination for elected office in Local 66, so the candidate favored by the Investigations Officer would be elected unopposed."  (Am. Compl. ¶ 10.)

Plaintiff ultimately agreed to settle these charges and entered into a written agreement

---

[3] Apparently, no such Consent Decree was entered into between the government and LIUNA.  (*See* Defs.' Mem. at 2-3 (asserting that after the government sent LIUNA a proposed complaint, LIUNA amended its constitution to implement a new internal disciplinary procedure).)

(the "MTDC Settlement") that required him "to resign 'from all membership, employment, or other positions held with the MTDC and any local union affiliated with the MTDC, including Local 66.'" (*Id.* ¶ 12.)  In the MTDC Settlement, plaintiff admitted the following facts:

> In or around 1990, Rowan participated in operating an illegal book-making operation on a union job site, accepting wagers on sporting events totaling in excess of $5,000 from one or more members of Local 66 at the Huntington Resource Recovery Plant [j]ob site in Huntington, New York.

> In or around 1990, Rowan was a "no-show" worker, receiving wage and benefit payments for work he did not perform at the Home Depot job site in Commack, New York for L. Epstein, Inc., a contractor with a signed collective bargaining agreement with Local 66.

> On or about February 8, 1994, Rowan organized a group of Local 66 members to proceed to a construction site for the purpose of causing physical damage to the construction site, which purpose was carried through and resulted in excess of several thousand dollars.

> In or about January 1998, Rowan attempted to influence witnesses to the incident referred to [ ] above to give false testimony at depositions before representatives of the Investigations Officer.

(Am. Compl. ¶ 16.)

*Plaintiff's Affiliation with Local 6A*

In approximately August 2005, plaintiff joined Local 6A[4] and was a member in good standing at all times until his expulsion.  Plaintiff asserts that the Local 6A Constitution incorporated the provisions of LIUNA's Constitution and By-Laws (the "Constitution").  (Am. Compl. ¶ 22.)  Plaintiff further asserts that the Constitution contained numerous provisions that were "mandated by the Government as part of the settlement reached in connection with [the

---

[4]    Plaintiff asserts that Local 6A is not, and has never been, a local union affiliated with the MTDC.  (Am. Compl. ¶ 13.)

DOJ's] investigation into the allegations of corruption by the officers of [LIUNA]." (*Id.* ¶ 23.)

In approximately February 2009, LIUNA's Special Counsel brought written disciplinary charges against plaintiff based upon his admissions of misconduct made in the MTDC Settlement, and sought plaintiff's expulsion from Local 6A. The charges alleged that plaintiff engaged in "barred conduct" by committing the following acts of racketeering: (1) operating an unlicensed book-making operation ("Charge One"), (2) causing damage to a construction site in Glen Cove, New York ("Charge Two"), and (3) "harassing" witnesses to the vandalism at the Glen Cove construction site in an attempt to "change their testimony" ("Charge Three"). (*Id.* ¶ 25.)

### The First Hearing Before the IHO

A hearing on plaintiff's disciplinary charges was held on April 17, 2009 before Independent Hearing Officer Peter F. Vaira (the "IHO"). The Special Counsel introduced into evidence plaintiff's factual admissions made in the MTDC Settlement. The Special Counsel also had one witness available at the hearing on standby: Bill Davidson ("Davidson"), who had been employed as a United States Department of Labor ("DOL") Special Agent assigned to assist the Investigations Officer at the time plaintiff entered into the MTDC Settlement, but who had left the DOL and was working for LIUNA as of February 2009. However, the Special Counsel did not call Davidson to the stand; in fact, no witnesses were called by either side. (Am. Compl. ¶ 65-70.)

On July 23, 2009, the IHO rendered a written decision sustaining plaintiff's expulsion from Local 6A. Specifically, the IHO determined that plaintiff's resignation from Local 66 as part of the MTDC Settlement actually constituted an expulsion from that local within the

meaning of Article III, Section 1(g) of LIUNA's Constitution. As such, the IHO concluded, LIUNA's Constitution required plaintiff to obtain permission of the General Executive Board before he joined Local 6A in August 2005. (Decl. of Patrick J. Slevin, Esq., dated Oct. 7, 2011 ("Slevin Decl.") Ex. 4 at 8-9.) Because plaintiff had not done so, the IHO decided that plaintiff was barred from becoming a member of Local 6A and, accordingly, his membership was revoked. (*Id.* at 9.) The IHO did not discuss or make any findings as to the merits of Charges One, Two, or Three.

### *The First Appeal*

Plaintiff appealed the IHO's decision to LIUNA's Appellate Officer ("AO") and, on August 2, 2010, a Special Hearing Officer was appointed for the purpose of conducting an appellate hearing. (Am. Compl. ¶¶ 30-33.) The hearing was held on August 27, 2010 and on October 5, 2010 the AO issued a written order vacating the IHO's decision. (*Id.* ¶¶ 33-35.) The AO concluded that the idea that plaintiff had failed to comply with the requirements of Article III, Section 1(g) of the Constitution, which had been raised *sua sponte* by the IHO, had not been included in any of the three disciplinary charges lodged against him. Thus, the AO determined that plaintiff had not received prior notice of that allegation of misconduct as required under the LMRDA and, therefore, it could not serve as grounds for his expulsion. (*See* Slevin Decl., Ex. 5 at 9.) The AO remanded the matter for further proceedings. (*Id.*)

### *Further Proceedings Before the IHO*

The case returned to IHO Vaira on remand. Plaintiff moved to preclude the Special Counsel from calling any witnesses or submitting any further evidence on remand, and the Special Counsel cross-moved for permission to supplement the record with Davidson's

testimony. (Slevin Decl., Ex. 6 at 2.) By written decision dated November 23, 2010, the IHO denied the Special Counsel's motion to supplement the record and directed the parties to "file summary memoranda regarding the proof and the charges." (*Id.* at 3.)

In its legal brief submitted to the IHO, the Special Counsel withdrew Charges One and Two, noting that although they "'might have been proven through the introduction of additional evidence,' . . . there was insufficient proof presented at the original hearing on April 17, 2009 to sustain" those charges. (Slevin Decl., Ex. 7 at 10.) With respect to Charge Three, the IHO concluded, in a written opinion dated January 5, 2011, that the Special Counsel had proven its case by a preponderance of the evidence, finding: "The conduct admitting in Rowan's [MTDC] Stipulation and Settlement proves the conduct alleged in Charge Three." (*Id.* at 19.)

*The Second Appeal*

Plaintiff appealed the IHO's January 5, 2011 decision, and the appeal was fully briefed and argued as of March 14, 2011. (Am. Compl. ¶ 42.) On July 21, 2011, the AO issued a written order affirming the IHO's January 5, 2011 decision. (Slevin Decl., Ex. 8.) Although the Amended Complaint was filed the same day,[5] it contains no allegations regarding the July 21, 2011 decision of the AO and, in fact, alleges that "No decision has been rendered on the Appeal." (Am. Compl. ¶ 42.) The present motion to dismiss followed.[6]

_____

[5] The original Complaint was filed on August 23, 2010, before the First Appeal was decided. Following the issuance of the AO's October 5, 2010 decision remanding the matter, Judge Joseph F. Bianco, who was presiding over this case at the time, stayed this action pending the outcome of the remand proceedings. (*See* Nov. 9, 2010 Elec. Order.)

[6] Judge Bianco held a telephone pre-motion conference on September 8, 2011 and set the briefing schedule for the present motion. After the motion was fully briefed and filed, he held a status conference on January 3, 2012 and, for the reasons stated on the record during that conference, he recused from the matter. This case was randomly reassigned to this Court for all

***The Amended Complaint***

The Amended Complaint asserts five causes of action, all stemming from plaintiff's allegations that he "has been denied due process in the context of his being expelled from membership in [LIUNA] and Local 6A." (Am. Compl. ¶¶ 49, 55, 58, 75.) Plaintiff seeks injunctive relief, "compensatory damages in the amount of $1.00, plus compensation for all lost health benefits," punitive damages, and attorneys' fees. (*Id.* ¶¶ 83-87.)

## DISCUSSION

### I.    *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

further proceedings.

> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided

further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss.

First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at

679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## A.      Documents Outside the Amended Complaint

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the

allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to

the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.

2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008)

(noting that a court considering a motion to dismiss "must limit itself to the facts stated in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint") (citation and internal quotation marks omitted).  Here, the Court will

consider LIUNA's Constitution, including LIUNA's Ethics and Disciplinary Procedure and

Ethical Practice Code, as documents incorporated by reference in the Amended Complaint.  The

Court will also take judicial notice of the written decisions of the IHO and AO.  *See Bd. of*

*Managers of the 195 Hudson Street Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d

463, 471 (S.D.N.Y. 2009) (finding the court "may properly rely on matters of public record in

deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial

decisions"); *Frith v. Hill*, 2009 WL 3073716, at *16 n.10 (S.D.N.Y. Sept. 23, 2009) (noting that

on a Rule 12(b)(6) motion, a court may consider any material that is "a proper subject of judicial

notice under Fed. R. Evid. 201(b)," including "orders of administrative agencies issued pursuant

to their delegated authority") (internal quotation marks omitted) (collecting cases).

## II.      General Legal Principles

Section 101(a)(5) of the LMRDA provides that:

> No member of any labor organization may be fined, suspended,
> expelled, or otherwise disciplined except for nonpayment of dues by
> such organization or by any officer thereof unless such member has

been (A) served with written specific charges; (B) given a reasonable
time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).  Only the third requirement appears to be at issue in this case.

To determine whether plaintiff was afforded a "full and fair hearing" before he was
expelled from Local 6A, the Court "should look to the traditional constitutional concepts of due
process," while remaining mindful that "the 'member need not necessarily be provided with the
full panoply of procedural safeguards found in criminal proceedings.'"  *Schermerhorn v. Local
100, Transp. Workers Union of Am.*, 1995 WL 677092, at *5 (S.D.N.Y. Aug. 17, 1995) (quoting
*Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir. 1977)).  Thus, disciplined union members are
entitled to the right to confront and cross-examine any witnesses against them, and are further
entitled to a hearing before an impartial hearing officer or panel.  *See Batorsky v. Sheedy*, 13 F.
Supp. 2d 287, 293 (N.D.N.Y. 1998); *Schermerhorn*, 1995 WL 677092 at *5.

The Supreme Court has made clear, however, that the statutory guarantee of a "full and
fair hearing" requires only that "the charging party [ ] provide some evidence at the disciplinary
hearing to support the charges made."  *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233,
246 (1971).  The "some evidence" standard is, furthermore, the "proper standard of judicial
review."  *Id.*; *see also Batorsky*, 13 F. Supp. 2d at 293 ("In deciding whether a union member has
received a full and fair hearing, a court should consider whether there was 'some evidence'
offered by the grievant at the hearing to support the charges.").

### III.     *The First and Third Causes of Action are Dismissed*

In his First Cause of Action, plaintiff asserts that "[t]he failure to render a decision within
twenty-nine months of the initial charges and in excess of the statutory four months of the

11

February 2009 charges is per se arbitrary and capricious." (Am. Compl. ¶ 47.) Similarly, in the Third Cause of Action plaintiff alleges that "[t]he failure of the [AO] to rule on the appeal, notwithstanding that the matter had initially been before him for almost a full year and on remand for in excess of four months, is in and of itself arbitrary and capricious." (*Id.* ¶ 57.)

In his legal memorandum, plaintiff asserts that the "LMRDA assumes a four month period to be adequate to resolve discipline cases." (Pl.'s Opp'n at 18 (citing 29 U.S.C. § 411(a)(4).) Contrary to plaintiff's assertions, however, the cited statutory provision does not set forth a four-month time limit for a union to conclude any disciplinary proceedings it may bring against a member. Rather, the statute provides:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization before instituting legal or administrative proceedings against such organization . . . .

29 U.S.C. § 411(a)(4). This statutory provision, therefore, sets forth an exhaustion requirement – a union member may not sue his union until he exhausts "reasonable hearing procedures," but the union member must only do so for four months before he becomes free to file suit. The statute sets forth no time frame within which a union is required to initiate and complete internal disciplinary proceedings. *See Batorsky*, 13 F. Supp. 2d at 294 (rejecting due process claim asserted by union member when Ethics Committee took more than 240 days to reach disciplinary decision).

Plaintiff further asserts that "[d]elay in administrative processing constitutes arbitrary or capricious conduct under the [Administrative Procedures Act]." (Pl.'s Opp'n at 18 (citing

*Hondros v. U.S. Civil Serv. Comm'n*, 720 F.2d 278, 293 (3d Cir. 1986).)  Even assuming

*arguendo* that the case cited by plaintiff can be read to support the broad proposition asserted,

plaintiff has failed to articulate why case law defining the contours of "arbitrary or capricious

conduct under the A.P.A. " (*see id.*) is relevant to this case, which asserts violations of the

LMRDA.

Accordingly, defendants' motion to dismiss plaintiff's First and Third Causes of Action is

granted.

### IV.     *Plaintiff's Second Cause of Action is Dismissed*

In his Second Cause of Action, plaintiff alleges that he was deprived of a "full and fair

hearing," as required by the LMRDA, because (1) "[a]ll the purported evidence produced [in

support of the disciplinary charges lodged against him] was based upon events which were barred

by the applicable statutes of limitation, and (2) "the decision of the hearing officer was not based

upon evidence and was unsupported by evidence."  (Am. Compl. ¶¶ 53, 54.)  The Court

addresses each of these allegations in turn.

#### A.     *Plaintiff's Statute of Limitations Argument*

Section 101(a)(5) of the LMRDA does not set forth any time period within which a union

must commence disciplinary action against one of its members, *see* 29 U.S.C. § 411(a)(5), and

plaintiff has not pointed to any other statutory provision or interpretive case law imposing such a

limitations period.  Moreover, LIUNA's internal disciplinary procedural rules expressly state that

no such limitation exists: "As long as the offending conduct at issue is relevant to an accused's

current membership in, or service to, the Union, the Special Counsel may bring charges,

*regardless of when the conduct at issue occurred*."  (Slevin Decl., Ex. 1 at 7-8 (emphasis

added).)[7]  Thus, the Court declines plaintiff's suggestions, which are unsupported by relevant

case law or other legal authority, to impose either the six year statute of limitations applicable to

contract actions, or the three year statute of limitations applicable to First Amendment violation

actions arising under Section 101(a)(2) of the LMRDA, or the four year statute of limitations

applicable to RICO actions.  (*See* Pl.'s Opp'n at 19-20.)

       To the extent the Amended Complaint can be read as asserting a laches argument, such an

argument also fails.  "[T]he existence of laches is a question primarily addressed to the discretion

of the trial court . . . ."  *Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30-31 (1951).  "Where there

has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has

ensued from the mere passage of time, there should be no bar to relief."  *Id.* at 31.  "Prejudice

results when a delay 'makes it difficult to garner evidence,' or where a 'change in position'

makes it inequitable to allow plaintiff's claim to proceed."  *United States v. Int'l Bhd. of

Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 829 F. Supp. 608, 615

(S.D.N.Y. 1993) (quoting *Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409,

424 (2d Cir. 1992)).

       Plaintiff asserts that the charges against him were brought by the Special Counsel in

February 2009 – more than ten years after he committed the conduct at issue.  (Pl.'s Opp'n at 19.)

The Court notes, however, that this ten-year estimate does not account for the sizable time gap

---

       [7]      LIUNA's Ethics and Disciplinary Procedure ("EDP"), in which the above-quoted
language is found, "sets up a process to ensure that potential violations are investigated and
decided by experienced, neutral and independent officials in accordance with procedures that are
fair and impartial."  (Slevin Decl., Ex. 1 at 1.)  As set forth above, the Court may properly refer
to the EDP on this Rule 12(b)(6) motion because its terms have been expressly adopted by the
Constitution, which is incorporated by reference in the Amended Complaint.  (*See* Am. Compl. ¶
22.)

between plaintiff's departure from Local 66 in approximately 1998 and his joining Local 6A in August 2005. (Am. Compl. ¶ 20.) In any event, even if the Amended Complaint could be read as alleging an "inexcusable delay" on the part of defendants in bringing disciplinary charges against him, plaintiff has failed to allege that he has suffered any resulting prejudice. *See Stone v. Williams*, 873 F.2d 620, 625 (2d Cir. 1989) ("Laches is not imposed as a bar to suit simply because a plaintiff's delay is found unexcused; it must also be determined whether the defendants have been prejudiced as a result of that delay."). As plaintiff has repeatedly alleged, the only evidence proffered against him during the hearing before the IHO was the MTDC Settlement containing his admissions of misconduct. Thus, the Court is hard pressed to see how any delay would have "hindered his ability to defend" against the charges. *See Int'l Bhd. of Teamsters*, 829 F. Supp. at 615.

Thus, plaintiff's claim that his due process rights were violated by virtue of the passage of time between his admitted misconduct and defendants' commencement of disciplinary charges against him is dismissed.

### B. *Plaintiff's Assertions Regarding the Insufficiency of the Evidence*

As noted above, "[i]n deciding whether a union member has received a full and fair hearing, a court should consider whether there was 'some evidence' offered by the grievant at the hearing to support the charges." *Batorsky*, 13 F. Supp. 2d at 293; *see also Hardeman*, 401 U.S. at 246 (finding that the "some evidence" standard is the "proper standard of judicial review").

Charge Three[8] alleged that plaintiff had "committed barred conduct under LIUNA's Ethical Practices Code (EPC) and Section 3 of the Ethics and Disciplinary Procedure (EDP)" by "committing an act of racketeering in violation of 18 U.S.C. § 1512 by harassing witnesses to the vandalism at a construction site in Glen Cove, New York to change their testimony before the Investigation Officer." (Slevin Decl., Ex. 7 at 4-5.) 18 U.S.C. § 1512 sets forth criminal penalties that shall be imposed against any individual who:

> [K]nowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding; [or]
>
> (2) cause or induce any person to –
>
> (a) withhold testimony, or withhold a record, document, or other object, from an official proceeding . . . .

18 U.S.C. § 1512(b)(1), (b)(2)(A). In his January 5, 2011 decision, the IHO concluded, in relevant part:

> As part of his settlement agreement, Rowan stipulated to the admission of certain facts. Rowan admitted that, on or about February 8, 1994, he organized a group of Local 66 members to vandalize the KFC construction site in Glen Cove, New York, causing damage in excess of several thousand dollars. Rowan also admitted to attempting to influence witnesses to the KFC construction site incident to give false testimony in depositions before representatives of the Investigations Officer in or about January 1998. The Investigations Officer was a court-appointed officer with the power to conduct investigations and conduct depositions in an official federal proceeding authorized by the Consent Decree. The stipulated facts clearly describe acts [of] corruptly persuading another person or

---

[8] As noted above, Charges One and Two were withdrawn by the Special Counsel before the IHO ruled on their merits on remand.

16

> attempting to do so with the intent to influence, delay, or prevent the
> testimony of any person in an official proceeding.

(Slevin Decl., Ex. 7 at 18.) The Court finds that plaintiff's admissions made in the MTDC

Settlement constitute "some evidence" that he engaged in "barred conduct," i.e., conduct that

violated 18 U.S.C. § 1512(b).

Plaintiff asserts that the "some evidence" standard is not the proper standard of judicial

review, reasoning that "[u]nder the Code of Ethics the standard is much higher, to wit, there must

be a preponderance of evidence supporting a just cause standard in order to implement any form

of discipline." (Pl.'s Opp'n at 23.) As the IHO indicated in his January 5, 2011 decision, the

Code of Ethics did require the Special Counsel to prove Charge Three by a preponderance of the

evidence. (*See* Slevin Decl., Ex. 7 at 17.) That, however, does not alter the applicable *judicial*

standard of review: the "some evidence" standard. *See Hardeman*, 401 U.S. at 246 (finding that

the "some evidence" standard is the "proper standard of judicial review").[9]

Plaintiff also argues that "[t]he evidence before the IHO failed to include any suggestion

that the factual admission by Rowan involved [an attempt to influence a witness in] an 'official

proceeding.'" (Pl.'s Opp'n at 24.) The Court disagrees. The term "official proceeding," as it is

used in 18 U.S.C. § 1512, is defined as, *inter alia*, "a proceeding before a judge or court of the

United States." 18 U.S.C. § 1515(a)(1). Moreover, for purposes of 18 U.S.C. § 1512, "an

official proceeding need not be pending or about to be instituted at the time of the offense." 18

U.S.C. § 1512(f)(1). As set forth above, plaintiff admitted in the MTDC Settlement that he had

"attempted to influence" witnesses to "give false testimony at depositions before representatives

---

[9] In any event, the Court finds that plaintiff's admissions in the MTDC Settlement
would constitute evidence sufficient to meet a "preponderance of the evidence" standard.

of the Investigations Officer." (Am. Compl. ¶ 16.) The Investigations Officer was a court-appointed officer charged with the task of investigating and filing charges of misconduct pursuant to the terms of the Consent Decree between the government and the MTDC. *See Mason Tenders Dist. Council of Greater N.Y.*, 1994 WL 742637 at *6. Further, the disciplinary procedure set forth in the Consent Decree provided that a disciplinary charge filed by the Investigations Officer would ultimately go before the court-appointed Monitor, and that all discipline imposed thereafter was to be "so ordered" by the court. *Id.* at *9. Thus, there was some evidence before the IHO that plaintiff's actions involved an attempt to influence witness testimony in connection with an "official proceeding."[10]

### C. *Plaintiff's Additional Arguments*

Plaintiff makes several additional arguments in his opposition papers that are not based upon allegations made in the Amended Complaint. "It is 'axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss,'" and "allegations made for the first time in [a plaintiff's] brief" may therefore be rejected. *Stillman v. Townsend*, 2006 WL 2067035, at *3 (S.D.N.Y. July 26, 2006) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)); *see also Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are

---

[10]     Plaintiff further asserts that his admitted "attempt[s] to influence" witnesses to give false testimony does not fall within the purview of 18 U.S.C. § 1512 because he did not admit to "hinder[ing], delay[ing], prevent[ing] or dissuad[ing]" anyone from testifying. (Pl.'s Opp'n at 24.) The argument seems to be that plaintiff did not try to convince witnesses to abstain from testifying – he merely attempted to persuade them to testify falsely. The plain language of the statute, however, also prohibits any attempt to "influence . . . the testimony of any person in an official proceeding," which would include attempts to influence witnesses to commit perjury. *See* 18 U.S.C. § 1512(b)(1).

18

. . . treated as matters outside the pleadings for purposes of Rule 12(b).").  Even if the Court were inclined to examine the merits of these allegations, however, they would be dismissed.

Plaintiff acknowledges that Charge Three alleged that he had committed "barred conduct" in violation of "LIUNA's Ethical Practice Code & Section 3 of the Ethics & Disciplinary Procedure," but argues that LIUNA's Ethical Practice Code only prohibits "Union officer[s], representatives or employee[s]" from engaging in barred conduct.  (Pl.'s Opp'n at 15 (quoting Slevin Decl., Ex. 1 at 5.)  Plaintiff contends that this language "does <u>not</u> prohibit rank and file members, such as Rowan, from engaging in the charged conduct."  (*Id.*)  Even if LIUNA's Ethical Practice Code can be correctly interpreted in the manner that plaintiff suggests, the Court notes that plaintiff was also charged with a violation of Section 3 of the Ethics & Disciplinary Procedure, which expressly states: "The Special Counsel shall have the authority and duty to investigate and prosecute charges (or otherwise impose discipline, as provided for by the Constitution) against any officer, agent, representative, employee, *or member of the Union for engaging in barred conduct*."  (Slevin Decl., Ex. 1 at 7 (emphasis added).)

Next, plaintiff argues that "LIUNA's interpretation of the Disciplinary Code is further arbitrary as it seeks to punish past conduct, which is clearly not the intent of the language of the code."  (Pl.'s Opp'n at 16.)  This argument, however, is belied by the explicit language of Section 3 of the Ethics & Disciplinary Procedure, discussed above: "As long as the offending conduct at issue is relevant to an accused's current membership in, or service to, the Union, the Special Counsel may bring charges, *regardless of when the conduct at issue occurred*."  (Slevin Decl., Ex. 1 at 7-8 (emphasis added).)

Finally, plaintiff asserts that the IHO erred by relying on evidence "outside the record," to wit: documents regarding "the history of LIUNA" as well as the underlying charges originally brought against plaintiff by the Special Investigator. (Pl.'s Opp'n at 22-23.) When plaintiff raised this issue in connection with his second appeal, the AO ruled that he was "inclined to view the MTDC charges against Mr. Rowan as a proper subject of judicial notice insofar as those charges supplied the factual predicate for the Stipulation and Settlement that Mr. Rowan executed to resolve them." (Slevin Decl., Ex. 8 at 14.) The AO further ruled that even if it was "inappropriate" for the IHO to take judicial notice of those materials, the IHO did not err because he did not make any reference to them in his findings of fact, and because the IHO's legal conclusions were based solely upon the admissions plaintiff made in the MTDC Settlement. (*See id.* at 14-15.) The Court agrees, and finds plaintiff's objections on this ground to be without merit.

Thus, defendants' motion is granted to the extent that plaintiff's Second Cause of Action is dismissed.

## V.      *Plaintiff's Fourth Cause of Action is Dismissed*

In plaintiff's Fourth Cause of Action, he alleges that "the underlying charges were brought to the attention of [LIUNA] in violation of the terms of the MTDC Settlement." (Am. Compl. ¶ 60.) According to plaintiff, the MTDC Settlement "prohibited the Special Investigator, and its agents, from initiating contact with any other entity regarding the incidents admitted by Rowan, unless the request was initiated by the other entity." (*Id.* ¶ 66.) As noted above, plaintiff alleges that Davidson, who had worked with the Special Investigator at the time plaintiff entered into the MTDC Settlement, had subsequently been hired by LIUNA. (*Id.* ¶ 68.) Plaintiff

contends that Davidson "us[ed] the information acquired from his association as an agent of the Special Investigator" and "provided that information to LIUNA," in violation of the MTDC Settlement. (*Id.* ¶ 71.)

As an initial matter, and as defendants point out, plaintiff never brought this issue to the attention of the IHO or AO at any point. Generally, if a party fails to raise an issue before an arbitrator, that party may not raise it for the first time in court. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (citing *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993)); *see also Local Union No. 38 v. Hollywood Heating & Cooling, Inc.*, 1 Fed. Appx. 30, 32 (2d Cir. Jan. 5, 2001) (noting that "issues not raised before the arbitrator are generally waived"). Plaintiff has failed to articulate why this general rule of waiver would be inapplicable here.

Assuming *arguendo* that plaintiff's claim has not been waived, it still fails on the merits. Even if plaintiff could establish that any breach of the MTDC Settlement (an agreement to which defendants were not a party) by Davidson would implicate his rights under the LMRDA, the allegations in the Amended Complaint fail to cross "the line between possibility and plausibility of 'entitlement to relief.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). Although plaintiff alleges that "but for the breach of the confidentiality provisions of the MTDC Settlement, [LIUNA] would never have had knowledge of the specifics of the MTDC Settlement," plaintiff also acknowledges that "the terms of the MTDC Settlement were docketed in Federal Court" and, therefore, were publicly available. (Am. Compl. ¶ 61.) Accordingly, plaintiff has failed to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level,'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(quoting *Twombly*, 550 U.S. at 544)), and his Fourth Cause of Action is dismissed.

## VI.    *Plaintiff's Fifth Cause of Action, as Currently Pled, is Dismissed*

In his Fifth Cause of Action, plaintiff asserts that representatives of the various offices

associated with LIUNA's "internal prosecutorial system," i.e., "offices of the special counsel,

offices of independent hearing officers, and appellate offices," receive "fees extending into the

millions of dollars" in connection with their work for LIUNA.  (Am. Compl. ¶¶ 77-79.)  Plaintiff

asserts that "in recent years, the income being derived by these offices has dramatically declined,

due to the absence of cases of corruption, the types of cases that originally led to the creation of

these offices."  (*Id.* ¶ 80.)  As a result of this decline, plaintiff continues, these offices "have

sought to prosecute old, time barred, stale and merit less (sic) cases including, but not limited to

the case at hand."  (*Id.* ¶ 81.)

In his legal memorandum, plaintiff maintains that the disciplinary charges against him

were brought with an improper motivation, but shifts gears slightly.  Now plaintiff asserts that

defendants' motivation stemmed from their "fear that [plaintiff] would oppose the trusteeship of

his current union, Local 6A" and, by implication, their desire to preclude any such opposition.

(Pl.'s Opp'n at 2; *see also id.* at 24.)

It is well-settled that when "there was evidence before the disciplinary tribunals which

could support [disciplinary] charges, the court need not inquire into the motivation for their filing

as part of its inquiry whether plaintiffs received the full and fair hearing mandated by 29 U.S.C. §

411(a)(5)(C)."  *Rosario v. Dolgen*, 441 F. Supp. 657, 682 (S.D.N.Y. 1977), *aff'd in relevant part*,

605 F.2d 1228 (2d Cir. 1979); *see also Mandaglio v. United Bhd. of Carpenters & Joiners of*

*Am.*, 575 F. Supp. 646, 654 (E.D.N.Y. 1983) ("Nevertheless, the record reveals that plaintiffs had their day in court before the trial committees; consequently, the motives of their accusers are irrelevant [to their claims under 29 U.S.C. § 411(a)(5)(C)].")

However, while plaintiff's allegations regarding the motives of his accusers are irrelevant to his claim that he was denied a full and fair hearing under the LMRDA, such allegations could be relevant to a claim that plaintiff was disciplined in order to prevent them from exercising rights protected under the LMRDA.  Section 609 of the LMRDA provides:

> It shall be unlawful for any labor organization, . . . to fine, suspend,
> expel, or otherwise discipline any of its members for exercising any
> right to which he is entitled under the provisions of this chapter.

29 U.S.C. § 529.  The improper motivations that plaintiff emphasizes in his motion papers could be relevant to a claim made pursuant to that statute.  *See Mandaglio*, 575 F. Supp. at 654 (finding the "motives of the actors are relevant to a § 529 claim" that the defendant union filed disciplinary charges "as a subterfuge for their real motive of silencing plaintiffs' opposition to corruption and to prevent them from seeking office").

Such a claim does not, however, fall within the ambit of the pleadings as they are currently framed.  In his papers, plaintiff seems to back away from his assertions made in the Amended Complaint that his disciplinary charges were filed "in order to perpetuate the offices of the IHO and the related bodies," i.e., by generating fees, and emphasizes a new allegation that "he has been subjected to all of the proceedings because of [both] his past objections to [LIUNA's] trusteeships," as well as any future objections he might make.  (*See* Pl.'s Opp'n at 24-25.)  However, this new allegation, which now seems to form the crux of plaintiff's claim, is absent from the Amended Complaint.

Accordingly, the Fifth Cause of Action as currently framed and to the extent it attempts to assert a claim that plaintiff did not receive a "full and fair hearing" in violation of 29 U.S.C. § 411(a)(5)(C) is dismissed. Based on the information presently before it, however, the Court hereby grants plaintiff leave to move to amend his pleading for the sole purpose of alleging a violation of 29 U.S.C. § 529, to wit: Defendants' decision to discipline and eventually expel plaintiff from Local 6A was improperly motivated. *See Rosario*, 441 F. Supp. at 682 (finding plaintiff could maintain a claim under 29 U.S.C. § 529 by alleging "that the motivation of the various trial bodies in imposing the discipline was to inhibit their expression of dissenting views . . . Broadly read, this allegation challenges the impartiality of the disciplinary tribunals and clearly states a claim under the LMRDA.").[11]

## VII. *Plaintiff's Additional Allegations of Bias and his Request for Leave to Amend*

Plaintiff's opposition papers contain two additional assertions that the disciplinary proceedings against him were tainted by an impermissible bias. These assertions, however, are not pled in the Amended Complaint. Plaintiff urges the Court to grant him leave to amend his pleading pursuant to Rule 15(a). (*See* Sur-Reply at 2 n.3.) Rule 15 provides that leave to amend a pleading is granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may be denied, however, upon a showing of the futility of the proposed amendment. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6)

---

[11]     Because the Amended Complaint, as currently pled, is dismissed in its entirety, the Court need not address defendants' argument that Local 6A is not a proper party. (*See* Def.'s Mem. at 9-10.) To the extent plaintiff is inclined to name Local 6A as a defendant in his proposed amended pleading, he is directed to allege facts setting forth Local 6A's involvement in the alleged conduct.

motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009). The Court addresses each of plaintiff's additional allegations of bias in turn.

### A.       Remand to the Same IHO Following the First Appeal

Plaintiff asserts that "it is a per se violation of Title I [of the LMRDA] and a denial of a full and fair hearing to remand a decision of a panel hearing a disciplinary matter, to the same panel." (Pl.'s Opp'n at 9 (citing *Rosario v. Amalgamated Ladies Garment Cutters Union, Local 10*, 605 F.2d 1228 (2d Cir. 1979)). According to plaintiff, therefore, when his case was remanded to the same IHO that conducted the original hearing, his rights to a full and fair hearing were automatically violated. In *Rosario*, the Second Circuit affirmed the trial court's ruling that "a union cannot consistently with the full and fair hearing requirement of [Section] 101(a)(5) try a union member before a panel which includes one or more individuals who have previously heard the identical charges and adjudged the accused to be guilty." *Rosario*, 605 F.2d at 1242-43. This holding has been reaffirmed and applied by subsequent decisions from both the Circuit and district courts within the Circuit. *See United States v. Boggia*, 167 F.3d 113, 119 (2d Cir. 1999); *Feltington v. Moving Picture Mach. Operators Union Local 306 of IATSE*, 605 F.2d 1251, 1256 (2d Cir. 1979); *Perry v. Int'l Longshoremen's Ass'n*, 638 F. Supp. 1441, 1448-49 (S.D.N.Y. 1986).

Defendants argue that this case is entirely distinguishable from *Rosario* – the hearing in *Rosario* was held before a union trial board that was comprised of non-lawyer union members, while plaintiff's disciplinary hearing was held before the IHO, a "distinguished lawyer[]" who is

25

not a member of LIUNA or Local 6A. (Reply Mem. at 4-5.) Moreover, while the disciplinary charges in *Rosario* were brought by a union official and arose out of internal political differences, the charges against plaintiff were brought by LIUNA's Special Counsel and involved racketeering activity plaintiff admittedly engaged in while a member of another local. (*Id.* at 4-5.)

The Court is ultimately persuaded, however, that this case is distinguishable from *Rosario* for a different reason – also advanced by defendants. In *Rosario*, the Circuit relied very heavily on the fact that the members of the remand trial board had already adjudicated the merits of plaintiff's disciplinary charges when they sat as members of the original trial board. *See Rosario*, 605 F.2d at 1243 ("It cannot be denied that in a literal sense the members of the second tribunal, having found the accused guilty of the identical charges, have 'prejudged' his guilt."). The same is true of the other decisions applying the *Rosario* principle. *See Boggia*, 167 F.3d at 119 (noting that a union member cannot "be retried before a panel that includes one or more persons who previously heard the identical charges and found him guilty"); *Feltington*, 605 F.2d at 1256 ("Retrial of a union member before the same tribunal which previously convicted him on the identical charges cannot be countenanced . . . ."); *Perry*, 638 F. Supp. at 1449 ("Here there is no speculative 'danger' that there is prejudgement fatal to the hearing's fairness; it is an established fact that at least three members of the Executive Council had made written statements of their belief in Perry's and Local 6's guilt.").

Here, by contrast, the IHO did not make any findings as to the sufficiency of the evidence with respect to Charge Three when he issued his first written decision on July 23, 2009. Instead, as set forth above, the IHO decided to expel plaintiff for violating Article III, Section 1(g) of the

Constitution, a decision that was later vacated by the AO.  Thus, at the time the matter was

remanded to the IHO, he had not made any factual findings or legal conclusions as to whether the

Special Counsel had proffered sufficient evidence to support the allegations of misconduct made

in Charge Three.

Plaintiff argues that "the IHO admitted such bias following the remand" when he adhered

to his original conclusion, made following the first hearing, that plaintiff had been expelled (and

had not resigned) from Local 66.  (*See* Pl.'s Opp'n at 10 n.8.)  The Court does not agree that this

"admission" by the IHO "establish[es] [his] predisposition" (*see id.*) as to whether the allegations

in Charge Three had been sufficiently proven by the Special Counsel.  Accordingly, *Rosario* is

inapplicable to the present matter, and the Court concludes that plaintiff cannot, on these alleged

facts, maintain a claim under the LMRDA based upon the remand of his matter to the IHO.  Any

such amendment attempting to assert such a claim would, therefore, be futile.

### B.     The Financial Motivations of the IHO and AO

For the first time in his sur-reply, plaintiff asserts that because the IHO and AO "have

been paid exorbitant fees [by LIUNA] for their services[,] [t]he neutrality of such [ ] fact

finder[s] must be viewed with 'tempered skepticism.'"  (Sur-Reply at 2 & n.2.)  Defendants have

not been afforded any opportunity to respond to these allegations because they: (1) were never

raised at any time during the extensive administrative proceedings,[12] (2) were not alleged in

---

[12]     The Court is not, however, inclined to view plaintiff's allegations of bias as
waived based upon his failure to raise them with the IHO or AO before commencing this action.
*See Goodman v. Laborers' Int'l Union of N. Am.*, 742 F.2d 780, 783 (3d Cir. 1984) ("The failure
to raise the issue of bias on the part of the tribunal at a union disciplinary hearing, however, does
not preclude the issue from being raised in a court proceeding under the LMRDA.").

either the original or Amended Complaint, and (3) were never mentioned in plaintiff's legal memorandum in opposition to the present motion to dismiss.

"The right to trial by an unbiased tribunal is one of the fundamental and traditional concepts of due process." *Sawyer v. Am. Fed'n of Gov't Emps.*, 1998 WL 307055, at *3 (S.D.N.Y. June 11, 1998) (citing *Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1192-93 (D.C. Cir. 1996)). However, "[c]ourts have been reluctant to rule that personal bias or political enmity alone renders a hearing unfair." *Perry*, 638 F. Supp. at 1449. Even if plaintiff's allegations regarding the payments received by the IHO and AO were taken as true, the Court concludes that such facts alone would be insufficient to demonstrate that plaintiff did not receive a full and fair hearing as required by the LMRDA.[13] This is particularly true because, as noted above, there was "some evidence" before the IHO to support the conclusion that the Special Counsel had proven the allegations contained in Charge Three. Moreover, the Court does not agree with plaintiff's assertion that the "IHO telegraphed his bias at the remanded hearing" (*see* Sur-Reply at 2; Pl.'s Opp'n at 10 n.8) by adhering to his earlier conclusion that plaintiff had been expelled from Local 66. Thus, even if these allegations of bias on the part of

---

[13] As support for his assertion that the neutrality of the IHO and AO should be viewed with "tempered skepticism" by virtue of their receipt of fees from LIUNA, plaintiff cites *Nolan v. Heald College*, 551 F.3d 1148 (9th Cir. 2009). In that case, an insured commenced an ERISA action against her insurer after her long term disability benefits were terminated. The Circuit concluded, *inter alia*, that the district court erred by considering and weighing evidence outside the administrative record "without reference to the traditional rules of summary judgment," to wit: "[H]ad the district court viewed the evidence of bias [on the part of certain insurer-paid doctors] in the light most favorable to Nolan – and tempered the abuse of discretion standard with skepticism because of it," the court might have denied summary judgment. *Id.* at 1154. This decision is wholly inapplicable to the present case and motion.

the IHO and AO were asserted in a pleading, rather than in plaintiff's sur-reply, and even taking such allegations as true, they would be insufficient to establish a claim under the LMRDA.

## *CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the Amended Complaint is granted. Plaintiff will, however, be permitted to move for leave to amend his pleading to assert a claim under 29 U.S.C. § 529, as set forth above. Plaintiff's motion to amend must be served on or before September 4, 2012. Defendants' opposition shall be served on or before October 4, 2012. Plaintiffs' reply, if any, shall be served, and all papers shall be filed, on or before October 19, 2012. Plaintiff is directed to attach a copy of his proposed second amended complaint to his moving papers. *See Colida v. Nokia Am. Corp.*, 2006 WL 2597902, at *3 (S.D.N.Y. Sept. 11, 2006); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 275 (S.D.N.Y. 2006).

**SO ORDERED.**

Dated: Central Islip, New York
     August 3, 2012
                                                      /s/
                                                Denis R. Hurley
                                                Unites States District Judge